IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.                          Criminal Action No. 5:15CR57
                                                 (STAMP)

FRANK BOATRITE,

      Defendant.


### MEMORANDUM OPINION AND ORDER AFFIRMING AND ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, OVERRULING THE GOVERNMENT'S OBJECTIONS, AND GRANTING MOTION TO SUPPRESS

This is a motion to suppress evidence on the grounds that the defendant's girlfriend did not give knowing and voluntary consent for the police to search her residence, which she jointly occupied with the defendant. The defendant was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The defendant moved to suppress two firearms seized during a warrantless search of his and his girlfriend's residence. United States Magistrate Judge James E. Seibert issued a report recommending that the defendant's motion to suppress be granted. The government timely filed objections to the magistrate judge's report and recommendation. For the following reasons, this Court adopts and affirms the report and recommendation, grants the defendant's motion to suppress, and overrules the government's objections.

## I. <u>Background</u>

The Hancock-Brooke-Weirton Drug Task Force, among other law enforcement entities, were investigating Charles Marker ("Marker"), Harold Midcap ("Midcap"), and the defendant, Frank Boatrite ("Boatrite"), for suspected production and distribution of methamphetamine. ECF No. 27 at 24. Marker and Midcap have since been indicted for their suspected drug activity, but Boatrite was not indicted for that crime. <u>Id.</u> Rather, he has been indicted for being a felon in possession of a firearm based on two firearms seized during a consent search of the above mentioned residence.

At the time of the search, Boatrite lived with his then girlfriend, Lindsay Bass ("Bass"), in a trailer home in Follansbee, West Virginia. <u>Id.</u> at 42-43. His brother, Lloyd Boatrite ("Lloyd"), lived in a trailer next door with his girlfriend Ashley Bryan ("Bryan"). <u>Id.</u> at 44. Bryan called the police reporting that Lloyd had hit her and then gone next door to Boatrite's trailer. <u>Id.</u> at 43-44. She also stated that Boatrite had drugs and guns in his trailer. <u>Id.</u> at 28. Lieutenant Arthurs of the Brooke County Sheriff's Department responded to the call. He then contacted Corporal Matthew Beatty of the Brooke County Sheriff's Department, and a member of the Hancock-Brooke-Weirton Drug Task Force, and requested that Corporal Beatty come to the scene because Boatrite would not answer the door. <u>Id.</u> at 27.

When Corporal Beatty arrived, there were three uniformed officers from the Brooke County Sheriff's Department on the scene. Id. at 28. Corporal Beatty spoke with Bryan, confirming her report that Lloyd hit her, that he was inside Boatrite's trailer, and that there were drugs and guns in the trailer. Id. Corporal Beatty also spoke with a neighbor, who said that he had previously seen Boatrite with a gun. Id. at 29. While Corporal Beatty was questioning the neighbor, Boatrite and Lloyd exited the trailer. Id. The officers arrested the men at gunpoint and detained them in the back of a police cruiser. Id. at 29, 36, 46. Bass testified that she heard the police say "you think you're going to come down to West Virginia and start cooking meth" while arresting the Boatrites. Id. at 45. Corporal Beatty and Bass provided differing accounts of what next happened.

Corporal Beatty testified that he and Lieutenant Arthurs then entered the trailer, finding Bass inside. Id. at 29. They then asked Bass if there were other people in the trailer, and she said she did not think so. Id. The officers then asked Bass if they could search the trailer for other persons. Id. Corporal Beatty did not state whether Bass gave consent for the protective sweep. The officers conducted a protective sweep of the trailer for about two minutes. Id. at 29-30. At some point while Corporal Beatty was inside the trailer, he admitted that he "accuse[d] or ask[ed] [Bass] whether there were drugs in the [trailer]." Id. at 39.

3

Corporal Beatty also testified that Bass did not say she was uncomfortable with allowing the police to search and did not refuse to consent at any point. Id. at 37-38. He stated that he did not know if any other officer spoke to Bass outside of his presence. Id. at 38-39.

Bass testified that after the Boatrites were arrested police approached her with their guns drawn. Id. at 47. Beatty asked her if they could search for other people in the trailer. Id. Bass said she asked if she could refuse, and that the officers said "no" and shoved their way past her. Id. While the officers conducted the protective sweep, Bass testified that Beatty pointed to a bottle of Mucinex on the table and said "you know that they use it to make meth, don't you?". ECF No. 27 at 48. Bass also testified that Beatty told her that "if [she] wanted to play games, [they] would play games," and that the officers "would run [Bass's] name and get [her] record and see all the Sudafed that [she] bought." ECF No. 27 at 49. Bass testified that Beatty did not raise his voice, but "had an attitude about it." Id.

The Boatrites were then removed from the scene. Id. at 7. Corporal Beatty called Trooper Michael White of the Brooke County Sheriff's Department, and a member of the Hancock-Brooke-Weirton Drug Task Force, regarding the incident and asked Trooper White to come to the trailer. ECF No. 27 at 5-6. Corporal Beatty, Deputy United States Marshal Chad Simpson, Detective Popish from the

4

Weirton Police Department, and a uniformed officer from the Brooke County Sheriff's Department were on the scene, but the uniformed officer left when Trooper White arrived. Id. at 6, 14. Trooper White knocked on the trailer door and asked Bass if he could come inside to speak with her, and she invited him into the trailer. Id. at 7. Bass, Trooper White, Deputy Simpson, and Corporal Beatty entered Bass's living room. Id. at 7-8. The officers' guns were holstered but Corporal Beatty's gun was visible. Id. at 8.

Trooper White spoke with Bass about the domestic incident and told her that the officers had reports of drugs and guns in the trailer. Id. Trooper White testified that he then read a consent to search form to Bass and filled out a portion of the form describing the places to be searched and the property to be seized. Id. at 8-9. Bass then signed the form. Id. Trooper White testified that he did not accuse Bass of committing any crimes and did not restrict her movement or freedom in any way. Id. at 10-11. It appears that the tone of their conversation was non-confrontational and relaxed. Id. at 10. Trooper White testified that he told Bass she could ask the officers to stop their search at any time, id. at 11-12, and that Bass never specifically asked him if she could refuse to consent to the search. Id. at 18. He also testified that he did not tell Bass that if she refused to consent she would be detained until a search warrant was obtained and executed. Id.

Bass testified that before Trooper White arrived the officers kept asking her if they could search the trailer for meth production materials and accused her of cooking meth. Id. at 50. She said she told them that she was uncomfortable giving consent because Boatrite was not there, and she refused multiple times. Id. at 50-51. Bass testified that Trooper White then arrived. He spoke with her in the trailer and called himself "last-chance Mike" because he was her "last opportunity to tell the truth" and "that if [Bass] went ahead and told him the truth, that he would do what he could to help [her]." Id. at 51. Trooper White then asked Bass to step outside with him and Corporal Beatty. Id. at 51. The officers took Bass behind one of their vehicles and told her that she could consent to a search without Boatrite being there, but she stated she refused, saying that she did not feel comfortable about giving consent. Id. at 52-53. The officers then told her that they would detain her outside the trailer until they obtained and executed a search warrant. Id. at 53. Bass testified that after the officers told her she would be detained she "felt like if [she] didn't tell them that they could go ahead and search for what they wanted, they weren't going to let [her] back in [her] house." Id. at 54-55. Bass then verbally consented to the search. Id. at 55. Trooper White took out a consent to search form and quickly went over it with Bass, and Bass signed the form. Id. at 55. Bass testified that she did not believe she could ask the officers to

stop searching and leave, and that none of the officers told her she could do so. Id. at 57-58.

During the evidentiary hearing, the Court admitted as the Government's Exhibit No. 1, a consent to search form that contained a written description of the places to be searched and the property to be seized that was signed by Bass. When the government asked Bass if she recognized the form, she said it was given to her along with a property receipt after the officers finished their search. Id. at 65-66. Bass testified that before the search she signed a different document with only typed text, check-boxes, and a place for her signature. Id. at 70-71. Bass initialed the document and signed it. Id.

Following the evidentiary hearing, Magistrate Judge Seibert entered a report recommending that Boatrite's motion to suppress be granted. He concluded that Bass's testimony was "credible," that Trooper White's testimony was "mostly credible," and that Corporal Beatty's testimony was "somewhat credible." The magistrate judge found that there were three to six officers present at any given time during the incident, that Bass was not incapacitated due to drugs or alcohol, and that the incident lasted between forty-five minutes to an hour. At least some of the officers accused Bass of having drugs and meth production paraphernalia in the trailer. Bass gave oral and written consent, but the written consent form was not entered into evidence and the government could not locate

it.  Magistrate Judge Seibert concluded that Bass's consent was not knowing and voluntary under the circumstances.  The government timely filed objections to the report and recommendation.

## II.  Applicable Law

Under the Federal Magistrates Act, 28 U.S.C. §§ 631-639, a district court may designate a magistrate judge to consider motions to suppress evidence and statements as unconstitutionally obtained. Id. § 636(b)(1)(B).  After the magistrate judge has considered such a motion, he must submit "proposed findings of fact and recommendations for the disposition."  Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983) (internal quotation marks omitted).  The parties are entitled to file written objections to the magistrate judge's report and recommendation within fourteen days, and the district court must conduct a de novo review of the findings and recommendations objected to.  Id.; 28 U.S.C. § 636(b)(1)(C).  Any findings to which no party objects are upheld by the district court unless "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(C).

## III.  Discussion

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV. "Searches without probable cause are presumptively unreasonable, but if an individual consents to a search probable cause is

unnecessary." United States v. Robertson, 736 F.3d 677, 679–80 (4th Cir. 2013) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).  Courts must "apply a subjective test to analyze whether consent was given, looking to the totality of the circumstances." Id. at 680.  The government has the burden of proving consent by a preponderance of the evidence. Id. (citing United States v. Mendenhall, 446 U.S. 544, 557 (1980)).

As noted, the magistrate judge concluded that Bass's testimony was "credible," that Trooper White's testimony was "mostly credible," and that Corporal Beatty's testimony was "somewhat credible."  Based on these credibility determinations, the magistrate judge concluded that Bass was overborne by her encounter with law enforcement and that her consent was not voluntary.  The government objects to the magistrate judge's credibility determinations and to his conclusion that Bass's consent was involuntary.

A.  The Magistrate Judge's Credibility Determinations

The government objects to the magistrate judge's credibility determinations.  It argues that Bass's testimony was contradicted by Corporal Beatty and Trooper White's testimony, and that the record does not support a finding that Bass was credible.

Where a party objects to a magistrate judge's credibility determinations, the district court must conduct a de novo determination on credibility, but the court need not "rehear the

contested testimony in order to carry out the statutory command to make the required 'determination'" under § 636. <u>United States v. Raddatz</u>, 447 U.S. 667, 674 (1980). This is because "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." <u>Id.</u> at 676. However, a district court may not reject a magistrate judge's credibility findings without first conducting a <u>de novo</u> evidentiary hearing. <u>United States v. Ridgway</u>, 300 F.3d 1153, 1157 (9th Cir. 2002); <u>United States v. Cofield</u>, 272 F.3d 1303, 1305-06 (11th Cir. 2001); <u>Cullen v. United States</u>, 194 F.3d 401, 407 (2d Cir. 1999); <u>Hill v. Beyer</u>, 62 F.3d 474, 482 (3d Cir. 1995); <u>Louis v. Blackburn</u>, 630 F.2d 1105, 1109-10 (5th Cir. 1980); <u>see also</u> <u>United States v. Johnson</u>, 107 F. App'x 322, 331-32 (4th Cir. 2004) (Duncan, J., dissenting) (noting that the Courts of Appeals deciding considering this issue are in agreement).

A magistrate judge's credibility determinations based on live testimony are entitled to deference where they are supported by the record as a whole. <u>See</u> <u>United States v. Gibbs</u>, 421 F.3d 352, 357 (5th Cir. 2005) (noting that the district court's "deference to the magistrate's credibility determinations is appropriate when they are supported by the record"); <u>Cullen</u>, 194 F.3d at 407 (providing that "a district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding

without having the witness testify before the judge"); <u>Peyton v.</u> <u>Watson</u>, No. 7:09CV492, 2011 WL 1979041, *2 (W.D. Va. May 20, 2011) (conducting a de novo review of the record and determining that the magistrate judge's credibility determinations were entitled to deference because they were supported by the record as a whole). Thus, when a party objects to a magistrate judge's credibility determinations, the district court must first determine whether those determinations are supported by the record as a whole.  <u>See</u> <u>United States v. Starling</u>, No. 3:11CR30, 2011 WL 5445351, *7-8 (N.D. W. Va. Nov. 9, 2011).  If they are, then the district court must defer to the magistrate judge's credibility determinations. <u>See</u> <u>id.</u>; <u>Peyton</u>, 2011 WL 1979041 at *2.  If those determinations are not supported by the record as a whole, the district court must hold a new evidentiary hearing and make its own determination.  <u>See</u> <u>Starling</u>, 2011 WL 5445351, at *7-8.

After thoroughly reviewing the entire record, including a transcript of the evidentiary hearing, this Court finds that Magistrate Judge Seibert's credibility determinations are supported by the record as a whole.  The government argues that various portions of the record do not support the magistrate judge's credibility determinations, including consistencies between the officers' testimony, Bass's failure to recall minor details, alleged inconsistencies in Bass's testimony, and Bass's history of drug use.  However, based on this Court's review of the record, the

11

government's are without merit.  The record as a whole supports the magistrate judge's credibility determinations.

Additionally, the government argues that Bass's testimony would have been discredited if the magistrate judge allowed the government to cross-examine her about alleged false statements she made to police.  When the government was cross-examining Bass, it sought to ask her questions regarding statements she made to law enforcement about whether a criminal suspect was in her trailer when law enforcement came looking for him.  The government believed that Bass's statements regarding that suspect's location were false.  Magistrate Judge Seibert ruled that these questions were outside the scope of defense counsel's direct examination of Bass. The government now argues that the magistrate judge should have allowed the testimony because it was relevant to impeach Bass's character for truthfulness under Federal Rule of Evidence 608.

While Rule 608 allows a party to inquire on cross-examination into specific instances of a witness's conduct that are probative of the witness's character for truthfulness, that rule also specifically provides that "[b]y testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness." Fed. R. Evid. 608.  The government sought to compel Bass to answer questions that may have revealed that she provided false information to law enforcement or obstructed their

investigation; clearly incriminating Bass. Bass was not represented by counsel at the suppression hearing and had not been advised of her Fifth Amendment right against self-incrimination. Thus, the magistrate judge's ruling excluding this line of questioning was not erroneous.

Even if the magistrate judge allowed the line of questioning and the government was able to elicit testimony from Bass showing that she provided false information to law enforcement, that evidence would not change this Court's conclusions regarding the magistrate judge's credibility findings. For one thing, Bass's allegedly false statements were made to police who came to her trailer searching for another criminal suspect a few days after the search here. If Bass truly felt that she had been compelled to allow the police to search her trailer, she would have a motive to lie to law enforcement when they came back to search her trailer a few days later. Further, Bass's testimony was credible because it was largely uncontested and filled in many gaps left behind by the officers' testimony. Her subsequent allegedly false statements to law enforcement do not change the fact, as a review of the record reflects, that she offered the fullest and most frank account of the search. Accordingly, this Court finds that the magistrate judge's credibility determinations are supported by the record as a whole and will afford them appropriate weight.

B.   <u>Voluntariness of Consent</u>

As discussed above, this Court must look to the totality of the circumstances to determine whether Bass's consent was subjectively voluntary.  <u>Robertson</u>, 736 F.3d at 680.  Relevant factors include: (1) the officers' conduct; (2) the number of officers present; (3) the time of the encounter; (4) the characteristics of the person searched, including age and education; and (5) whether the individual searched was informed of her right to decline the search.  <u>Id.</u>  The United States Court of Appeals for the Fourth Circuit has emphasized that the final factor is "highly relevant."  <u>Id.</u>  The government has the burden of proving consent by a preponderance of the evidence.  <u>Id.</u> (citing <u>United States v. Mendenhall</u>, 446 U.S. 544, 557 (1980)).

Based on the magistrate judge's credibility determinations, this Court must give the most weight to Bass's testimony, some weight to Trooper White's testimony, and little weight to Corporal Beatty's testimony.  There were at least four officers on the scene at any given moment.  The officers arrested the Boatrites at gunpoint.  They approached Bass with their weapons drawn.  The officers asked Bass for consent to conduct a protective sweep, and when she asked if she could refuse, they said no.  During the sweep, the officers made comments about meth production in the trailer.  The officers made clear that they believed there was evidence of meth production in the trailer.  When the officers

14

asked her if they could search the trailer, Bass said she was uncomfortable giving consent because Boatrite was not there. She was then told that the officers would detain her until they obtained and executed a search warrant, making Bass feel that if she did not give consent she could not go back into her trailer. Before Bass consented to the search, the officers were there for at least a half-hour, and likely longer based on Trooper White and Corporal Beatty's testimony. Regardless of whether the officers told Bass that she could refuse consent at any time, she did not believe that she could refuse consent because the officers previously told her she could not refuse consent for the protective sweep.

Based on these circumstances, this Court finds that the government failed to carry its burden of proving that Bass voluntarily provided consent for the search. Bass's account of the search shows that she felt that she could not refuse consent. If she did refuse consent, Bass believed that she would be detained and not allowed to return to her trailer. The government failed to provide sufficient evidence to show otherwise. Trooper White and Corporal Beatty's testimony did not directly contradict key portions of Bass's testimony, did not provide a clear picture of the officers' intentions in conducting the search, and failed to show that Bass was subjectively aware of her right to refuse consent.

The government argues that Bass's written consent is entitled to great weight. While written consent supports a finding that consent was voluntary, it is but one fact to be considered in determining voluntariness. See United States v. Boone, 245 F.3d 352, 362 (4th Cir. 2001) (listing written consent as one of many facts to be considered). Here, the fact that Bass signed a written consent form does not necessarily mean that she voluntarily did so. Based on the totality of the circumstances, Bass believed that she could not refuse consent and that if she refused consent she would be detained.

The government also argues that this Court should compare this case to United States v. Boone, 245 F.3d 352 (4th Cir. 2001), arguing that the Fourth Circuit put great weight on the defendant's written consent in determining that his consent to a search of his home was voluntary. However, in Boone the Fourth Circuit concluded that the defendant voluntarily gave consent to the police to search his home for explosives only, based on the totality of the circumstances in that particular case. Id. at 363-64. Specifically, the defendant was suspected of murdering a woman by blowing up her vehicle, he was told he was a suspect, he was handcuffed, the police read the defendant his Miranda rights, the defendant cooperated with police and engaged in "small talk," the defendant signed a consent form, and the defendant drove himself to his house with police to conduct the search. Id. The Boone court

considered all the circumstances in that case and concluded that the defendant voluntarily gave written consent for the search of his home.  Here, this Court has considered all the circumstances and finds that Bass did not voluntarily consent to the search of her residence.

## IV.  <u>Conclusion</u>

For the foregoing reasons, the magistrate judge's report and recommendation (ECF No. 26) is AFFIRMED AND ADOPTED.  Accordingly, the defendant's motion to suppress (ECF No. 18) is GRANTED and the government's objections (ECF No. 29) are OVERRULED.  It is further ORDERED that all evidence obtained from the search of the trailer be EXCLUDED from any trial of this criminal action.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    February 22, 2016


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE